```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :   21-CR-609 (LAP)
         -v.-                       :
                                    :   MEMORANDUM
                                    :   & ORDER
OLUWADAMILOLA AKINPELU,             :
                                    :
             Defendant.             :
------------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant Oluwadamilola Akinpelu's motion for a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 489), and the Government's opposition, (dkt. no. 498).  For the reasons set out below, Defendant's motion is denied.

I. **Background**

    **a. Offense Conduct**

    The Defendant was a member of a ring that committed a series of frauds, primarily business email compromises and romance scams, against individuals and businesses located across the United States, including this District.  (Presentence Investigation Report ("PSR"), dated April 21, 2023 [dkt. no. 308] ¶ 13.)  More than 50 confirmed victims transferred over $9 million to bank accounts under the control of the eleven charged members of this ring.  (Id. ¶ 17.)[1]

---

[1] In referring to the number of victims in the charging documents, the Government only included payments from so-called "confirmed" victims—that is, individuals and/or entities that law (cont'd)

Like most of her co-defendants, the Defendant's role involved using aliases and fake companies to open bank accounts; receiving fraud proceeds into those accounts; and passing fraud proceeds on to others, including individuals located in Nigeria. (Id. ¶¶ 18-24.)  Starting in June 2020, bank accounts in the names of the Defendant's various aliases received over $5 million into those accounts, which included funds received directly from approximately twelve confirmed victims of the fraud ring.  (Id. ¶¶ 19, 105.)  The Defendant worked with several different members of the ring, including her co-defendant, Adedayo John ("John"), the highest-ranking charged member. (Id. ¶¶ 18-24.)  The Defendant was at the very top of her ten co-defendants when measured by the total amount of money received into her alias accounts.  (See dkt. no. 498 at 7.) However, the Government viewed John as being more culpable than the Defendant, despite the larger loss amount attributed to the Defendant and the significance and seriousness of the Defendant's conduct.  (See id.)

Over the course of the investigation, law enforcement officers identified emails sent from the Defendant to John attaching documentation for the Defendant's alias accounts and an email from John to the Defendant regarding a wire transfer of

---

(cont'd) enforcement has interviewed and/or otherwise confirmed transferred funds to the defendants after falling prey to business email compromise schemes and/or romance scams.  (Dkt. no. 498, n. 1.)

$37,300 for a building project in Nigeria. (Id. ¶ 22.) When law enforcement officers executed a search warrant at the Defendant's residence, they recovered approximately $100,400 in cash, as well as forged South African passports, debit cards, and cashier checks in the names of the Defendant's aliases. (Id. ¶ 23.) Additionally, pursuant to a civil seizure warrant, law enforcement seized the Defendant's Mercedes. (Id. ¶ 24.)

### b. Procedural History

On December 27, 2021, a grand jury in this District returned S1 Indictment 21 Cr. 609 (LAP) (the "Indictment"), charging the Defendant with one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 ("Count Two"). (Dkt. no. 103 ¶¶ 6-9.) The Indictment charged the eleven defendants with one or both of those crimes and also charged one of those defendants with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). (Id. ¶ 10.) The Defendant was arrested on October 13, 2021, at which time she was released on certain conditions. (PSR ¶ 25.)

On January 20, 2023, the Defendant appeared before Magistrate Judge Barbara C. Moses and pled guilty, pursuant to a plea agreement, to Count Two of the Indictment. (Id. ¶ 8.) The Court formally accepted her plea on February 6, 2023. (Dkt. no. 234.)

3

At the Defendant's sentencing proceeding on July 13, 2023, this Court imposed a sentence of 30 months imprisonment. (Dkt. no. 370.)

The Defendant has been incarcerated since October 12, 2023, and her projected release date is November 27, 2025. (Dkt. no. 498, Ex. A (Bureau of Prisons ("BOP") Sentencing Computations).) She is eligible for home detention on August 29, 2025. (Id.)

### c. The Defendant's Motion for Compassionate Release

On July 20, 2024, the Defendant filed her Motion, asking that she be "release[d] to house arrest so that she may receive the proper medical treatment and prescriptions," based on the following:

(i)  The Defendant "suffers from a severe anxiety and depression disorder for which she requires particular medications" and FDC Philadelphia "has . . . incorrectly prescribed Flu[o]x[e]tine, which makes her consistently unresponsive and inattentive"; and
(ii) The Defendant has "miss[ed] work assignments in the early morning or after hours because she is incapable of cognitively focusing" due to the Fluoxetine, and has been told she will be sent to the SHU.

(Mot. at 1.)

According to BOP records, the Defendant has not made a request for compassionate release to the warden of FCI Philadelphia (nor does the Defendant claim that she has done so). (Dkt. no. 498, Ex. D (BOP Administrative Records).)

4

### d. The Defendant's Medical and Disciplinary Records

The Defendant's BOP health records, which were provided to the Court under seal, show that the Defendant has received careful medical attention that appears to be consistent with the medical condition the Defendant identified in the Motion. (Dkt. no. 498, Ex. B (BOP Medical Records).)  Specifically, the Defendant met with BOP medical providers ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in November 2023 and again in early December 2023.  (Id. at 58-59.)  A few weeks later, she was prescribed, and consented to receiving, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (Id. at 4.)  As of at least June 2024, the Defendant was participating in a Non-Residential Drug Abuse Program, which includes a psychological treatment component.  (Id. at 49-55.) The Court has reviewed Defendant's BOP medical records, and they do not reflect Defendant's submission of a sick call slip or other complaints conveying that her medications were not working appropriately.

The Defendant was sanctioned for being absent from her work assignment on November 11, 2023 (before she began taking Fluoxetine), January 17, 2024, and June 1, 2024; on January 21, 2024, she was sanctioned for refusal to obey an order and failing to work as instructed, in connection with a work assignment. (Id., Ex. C (BOP Disciplinary Records).)  Based on communications with BOP officials, the Government reports, (dkt. no. 498 at 3), that

5

while these incidents have not resulted in the Defendant's going to the Special Housing Unit ("SHU"), multiple continued violations of this nature may result in such punishment. See P5270.09, Inmate Discipline Program, at 55 (available at https://www.bop.gov/policy/progstat/5270_009.pdf).

## II. Applicable Law

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed except that":

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Phillibert, 557 F. Supp. 3d 456, 459

6

(S.D.N.Y. 2020). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction.

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of Appeals explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to

7

"look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his

8

administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. § 3582(c)(1)(A)(i). The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing Butler, 970 F.2d at 1026); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable § 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." United States v. Giattino, No. 23-6918-cr, 2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); see also United States v. Ramirez, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular

case, what would otherwise be extraordinary and compelling circumstances.").

The statute also "sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" Keitt, 21 F.4th at 71 n.2 (quoting 18 U.S.C. § 3582(c)(1)(A)).  The relevant Sentencing Guidelines policy statement, U.S.S.G. § 1B1.13, sets forth requirements that must be met before a court can reduce a sentence. See 18 U.S.C. § 3582(c)(1)(A).  As relevant here, section 1B1.13(b)(6) provides as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The defendant bears the burden of proving that he is entitled to the requested relief under Section 3582(c)(1)(A). See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992); accord United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021).

### III. Discussion

#### a. Administrative Remedies

The Government contends that the Defendant has not exhausted her administrative remedies because she did not submit a petition for compassionate release to the Warden at FCI Philadelphia, meaning the claims in Defendant's motion were not presented to the BOP.  (Dkt. no. 498 at 5.)

Where a motion under 18 U.S.C. § 3582(c)(1)(A)(i) is made by a defendant, the defendant must first have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Courts in this Circuit disagree whether the exhaustion requirement in Section 3582(c)(1)(A) is waivable by the Court. Some Courts have excused failure to comply with the exhaustion requirement for equitable reasons like futility. See United States v. Scparta, 567 F. Supp. 3d 416, 426 (S.D.N.Y. 2020) ("the First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions."); United States v. Haney, 454 F. Supp. 3d 316, 320 (S.D.N.Y. 2020) (concluding that a court has discretion to waive the exhaustion requirement in Section 3582(c)(1)(A)).

11

Others have rejected that approach, holding that the exhaustion requirement ought to be strictly construed. See United States v. Binns, No. 12-CR-31 (VM), 2020 WL 2488241, at *1 (S.D.N.Y. May 14, 2020) (denying a motion for compassionate release as premature and requiring exhaustion where defendant was in state custody, had not yet begun his federal sentence, and offered no evidence he had asked the BOP for a reduction in his sentence).

Defendant does not provide any reason for her failure to exhaust her administrative remedies, let alone a reason that would permit the Court to waive compliance under Section 3582(c)(1)(A). Accordingly, Defendant has failed to exhaust her administrative remedies, and the Court may not modify her sentence.

### b. Extraordinary and Compelling Reasons

Even assuming Defendant had properly exhausted her administrative remedies, her motion for compassionate release would nevertheless fail on the merits. As noted above, the Defendant argues that release is warranted because the medication she was prescribed by BOP and consented to taking has made it difficult for her to concentrate, resulting in her missing work assignments. (Dkt. no. 489.) She argues that she faces the possibility of being sent to the SHU if she continues to miss work assignments. (Id.) Accepting all of these facts as true, they do not constitute extraordinary and compelling reasons.

The Sentencing Commission has identified specific types of medical circumstances that are "extraordinary and compelling." U.S.S.G. § 1B1.13(b)(1).  Those circumstances are "terminal illness"; a "serious" or "deteriorating" physical or mental condition that "substantially diminishes the ability of the defendant to provide self-care" within the facility; and conditions that require "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Id.  The Defendant's depression diagnosis does not fall into these categories.  Furthermore, BOP's records reflect that BOP providers have been treating her condition.  (Dkt. no. 498, Ex. B (BOP Medical Records).) See, e.g., United States v. Feliz, 16 CR. 809 (VM), 2023 WL 8275897, at *6 (S.D.N.Y. Nov. 30, 2023) (finding defendant did not establish a factual basis for his claim that he was not receiving treatment for post-traumatic stress disorder ("PTSD") at BOP facility); United States v. Binday, 12 Cr. 152 (CM), 2020 WL 4017822, at *6 (S.D.N.Y. July 16, 2020) (finding BOP "is capable of providing . . . adequate medical care, and appears to be doing so" in the defendant's case, given his detailed health records and the BOP's comprehensive treatment plan); United States v. Dussard, 16 Cr. 673 (GBD), 2020 WL 6263575, at *2 (S.D.N.Y. Oct. 23, 2020) (finding defendant did not demonstrate that his diabetes and PTSD substantially diminished his ability to provide

13

self-care and that he is not expected to recover from such conditions).

In any event, there is no objective evidence that the BOP has been unable or unwilling to address Defendant's concerns in the approximately nineteen months since she has been prescribed the medication. Defendant's medical records, filed under seal, do not indicate any question or complaint raised by Defendant with respect to her medication. Indeed, there are no complaints related to her medication or the malady for which it was prescribed. Also for this reason, Defendant has not demonstrated extraordinary and compelling circumstances.

### c. 3553(a) Factors

Even if Defendant had established extraordinary and compelling circumstances, the 3553(a) factors counsel against early release. Defendant participated in a large fraud ring in which she received over $5 million in her alias accounts from some twelve confirmed victims. She worked directly with John, who the Government views as the most culpable charged defendant, and the Government found over $100,000 in her home upon arrest. The seriousness of the offense counsels that Defendant serve her entire 30-month sentence.

**IV. Conclusion**

For the reasons set forth above, Defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 489), is denied.  The Clerk of the Court shall close docket number 489.

**SO ORDERED.**

Dated:    New York, New York
          August 12, 2025

_____
LORETTA A. PRESKA
Senior United States District Judge